## GROSJEAN v. GALLOWAY.

(Supreme Court, Appellate Division, Second Department. April 24, 1903.)

1. FRAUDULENT REPRESENTATIONS—OWNERSHIP OF PROPERTY—SUFFICIENCY OF EVIDENCE—SUBMISSION TO JURY.

In an action against defendant for fraudulently inducing plaintiff to purchase 12 lots by representing that he had title thereto, there was evidence that 10 years before the sale he "claimed to own 18 lots at that time," but none to show that at the time of the sale he stated that he owned them. Plaintiff's husband testified that defendant said "he could give a state tax title from the engineer's office; that he was to give such tax title and a quitclaim deed; that he mentioned that, nothing else." Also evidence that, some time after the purchase, witness said to defendant: "You told me you owned the lots, and so I understood that you owned them." Witness also testified that he believed such statement. Plaintiff did not testify as to any representation by defendant that he owned the lots, except that she asked him "if everything was all right with the lots, and he said, 'Yes.'" The husband's testimony was denied by defendant. *Held* insufficient for submission to jury.

2. SAME—DEFECTIVE TITLE—NOTICE.

In an action against defendant for fraudulently inducing plaintiff to purchase 12 lots by representing that he had title thereto, it appeared that before plaintiff paid the purchase money she was informed by a third party that he claimed to own two of the lots, which he had bought at a county tax sale, and that he did not believe that defendant owned the lots. *Held* sufficient to put plaintiff on inquiry.

3. SAME—FALSE REPRESENTATION—PROOF REQUISITE.

In an action for false representation inducing a purchase, it is necessary to establish the representation, its falsity, the intention to deceive, and that plaintiff relied on the representation and suffered damage thereby.

Appeal from Trial Term, Richmond County.

Action by Amelia Grosjean against William Galloway. From a judgment entered on a dismissal of the complaint, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Lyman A. Spalding, for appellant.
John G. Clark, for respondent.

GOODRICH, P. J. This is the second appeal from a judgment dismissing the complaint. The issues in the case, and the facts as they were presented on the first trial, are stated in our former opinion. 64 App. Div. 547, 72 N. Y. Supp. 331. On that trial the evidence was that the defendant represented that he owned the lots, and that he was the only owner of them, and, when asked whether his title was all right, said that he was sure of that. We held that the evidence was sufficient to require its submission to the jury. At the last trial, there was evidence that 10 years before the transaction set out in the complaint, the defendant "claimed to own eighteen [lots] at that time." There is no testimony to show that at the time of the transaction of 1899 the defendant stated that he owned the lots. Plaintiff's husband testified that the defendant said "he could give me a state tax title from the engineer's office. He was to give me a state tax title and a

quitclaim deed. He mentioned that; nothing else." There is evidence that some time after the purchase Mr. Grosjean, in an interview with the defendant, said to him: "You told me that you owned the lots, and so I understood that you owned them." He also testified: "I believed Mr. Galloway's statement that he owned the lots." But the difficulty is that there was no previous testimony, as there was on the first trial, that he had represented that he owned the lots, except the conversation which occurred 10 years before, and which cannot be considered as part of any representations inducing the purchase in 1899. The plaintiff herself does not testify to any representation by the defendant that he was the owner of the lots, except that she asked him "if everything was all right with the lots, and he said, 'Yes,'" but she said:

"By the Court: Q. You did not suppose that anybody was going to sell you lots worth $900 for $300, if he had a perfectly sound title, did you? A. Well, I did not suppose so, but you really can't tell. I don't know, but I supposed that he was paying taxes on them, and that we should buy them and redeem them. By Mr. Clark: * * * Q. When you were paying that money and took this deed, didn't you know that your title was liable to be disturbed at any time? A. Yes, I suppose I did."

The defendant, who was called by the plaintiff as a witness simply for the purpose of proving that he had no title to the lots when he sold them, testified that he was in possession of the property without paper title, except what is called a "certificate" from the State Comptroller's office, for the redemption of six of the lots in question, and of six others under some arrangement with Mr. Hollister, who had taken them from the state, apparently, by a purchase of tax titles.

It is manifest that the evidence on the last trial differs materially from that produced at the first trial, and is not sufficient to establish a representation of ownership at the time of the transactions in question. On the first trial, the plaintiff's husband testified that the defendant represented that he owned the lots. There is no such testimony at the last trial other than what has been stated above, and the plaintiff's claim rests upon the testimony of her husband, not corroborated by her, and denied by the defendant. The latter's allegation is that he was in possession of the lots and sold her that which he had, i. e., possession, and not the fee; and this is corroborated by the fact that the fee of the lots is shown to be worth from $900 to $1,200, that the plaintiff paid $300 for them and bargained to receive no other than a state tax title and a quitclaim deed, and by the fact that, before the money was paid to the defendant, the plaintiff was informed by Mr. Semler that he claimed to own two of the lots, which he had bought at a county tax sale, and that he did not believe that Galloway owned the lots.

While we held on the former trial that the evidence was sufficient (page 549, 64 App. Div., and page 332, 72 N. Y. Supp.) "to require a submission to the jury of the fact and the falsity of the representations, the defendant's knowledge, and the reliance of the plaintiff thereon," we are constrained to say that the plaintiff's evidence on the last trial was not so strong as it was on the first trial, and that it was not sufficient to require its submission to the jury. Besides, the plaintiff, be-

fore she determined to purchase, received sufficient notice to put her upon inquiry as to the defendant's ownership of the lots. This is clear from what Semler said. Mr. Grosjean testified that the defendant did not ask him not to have the title searched. The plaintiff could not rely blindly upon her belief that the defendant owned the property, after being put upon her guard by the conversation with Semler. In Kirsch v. Tozier, 143 N. Y. 390, 38 N. E. 375, 42 Am. St. Rep. 729, it was said (page 397, 143 N. Y., page 377, 38 N. E., 42 Am. St. Rep. 729):

"What circumstances will amount to constructive notice or will put a party upon inquiry is, in many cases, a question of much difficulty. A purchaser is not required to use the utmost circumspection. He is bound to act as an ordinarily prudent and careful man would do under the circumstances. He cannot act in contravention to the dictates of reasonable prudence, or refuse to inquire when the propriety of inquiry is naturally suggested by circumstances known to him." Citing Baker v. Bliss, 39 N. Y. 70; Story, Eq. Jur. § 400 et seq.

In an action for false representation, it is necessary to establish the representation, its falsity, the intention to deceive, and that the plaintiff relied upon the representation and had suffered damage thereby. Powell v. F. C. Linde Co., 58 App. Div. 261, 68 N. Y. Supp. 1070, affirmed 171 N. Y. 675, 64 N. E. 1125. The evidence at the last trial was not sufficient to establish the allegation that the defendant, at the time of the transaction, represented that he owned the fee of the lots, or that he intended to deceive the plaintiff, or that she relied thereon to her damage.

The judgment should be affirmed, with costs. All concur.